UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DOROTHY HAWTHORNE-BURDINE,

Plaintiff,

v.

OAKLAND UNIVERSITY, ET AL.,

Defendants.

_____/

Case No. 16-cv-13118

UNITED STATES DISTRICT COURT JUDGE
GERSHWIN A. DRAIN

UNITED STATES MAGISTRATE JUDGE
ANTHONY P. PATTI

## OPINION AND ORDER GRANTING MEDICOLEGAL SERVICES LLC'S MOTION TO DISMISS [25] AND GRANTING OAKLAND DEFENDANTS' MOTION TO DISMISS AND/OR FOR SUMMARY JUDGMENT [35]

## I. INTRODUCTION

Dorothy Hawthorne-Burdine ("Plaintiff") filed this case on August 29, 2016, alleging discrimination by her past employer, Oakland University, and other defendants including Medicolegal Services ("Medicolegal"), 30 individually-named defendants, and 100 John Does (collectively, "Oakland Defendants," excluding Medicolegal). *See* Dkt. Nos. 1, 12. This case is related to a prior proceeding (hereinafter, the "2015 Case"), which was dismissed and its judgment affirmed by the Sixth Circuit in November 2016. *See Hawthorne-Burdine v. Oakland Univ.*, 158 F. Supp. 3d 586 (E.D. Mich. 2016); *Hawthorne-Burdine v. Oakland Univ.*, No. 16-1103 (6th Cir. Nov. 3, 2016).

This matter is before the Court on Medicolegal's Motion to Dismiss [25] and Oakland Defendants' Renewed Motion to Dismiss and/or for Summary Judgment [35]. Both motions are fully briefed and oral argument was held on February 13, 2016.

For the reasons discussed herein, Court will **GRANT** Medicolegal's Motion to Dismiss [25] and **GRANT** Oakland Defendants' Renewed Motion to Dismiss and/or for Summary Judgment [35].

## II. BACKGROUND

### A. Plaintiff's Employment with Oakland University and Denial of Tenure

Facts related to Plaintiff's employment with Oakland University, her removal from the campus, and the denial of Plaintiff's tenure application were recited in the 2015 Case. *Hawthorne-Burdine*, 158 F. Supp. 3d at 591–96. As the facts related to these issues are lengthy, and all occurred prior to September 2015, the Court refers to the Background section of the order dismissing the 2015 Case for the sake of brevity. *See id.*

### B. The 2015 Case

On September 16, 2015, Plaintiff filed a complaint alleging discrimination by her former employer, Oakland University, Medicolegal Services, 28 individually-named defendants, and 100 John Does. *See Hawthorne-Burdine*, 158 F. Supp. 3d at 586.

In her Complaint in the 2015 Case, Plaintiff referenced to and quoted from the three independent medical examination assessments that Oakland University required her to undergo to be allowed to return to campus. Case No. 15-cv-13285, Dkt. No. 4, pp. 33–34 (Pg. ID 89–90). Oakland Defendants included these assessments as exhibits in their motion to dismiss and/for summary judgment to respond to Plaintiff's allegations. *Compare id.* (stating that all three assessments cleared Plaintiff to return to work) *with Hawthorne-Burdine*, 158 F. Supp. 3d at 594 (providing that Dr. Wolf's psychiatric examination reported that Plaintiff "should be regarded as unfit to return to her teaching position at the present time"); *see also Hawthorne-Burdine*, 158 F. Supp. 3d at 595 n.10 ("In her Complaint, Plaintiff misattributed her own statements, quoted by Dr. Wolf in his psychiatric report, as though they were Dr. Wolf's examination findings."). Defendants filed the medical assessments on the public docket on October 29, 2015. Case No. 15-cv-13285, Dkt. No. 12. Plaintiff filed a motion to strike the assessments on November 9, 2015. Dkt. No. 18. The Court sealed the assessments on November 10, 2015, Dkt. No. 20, one day after the Court was notified the documents should be placed under seal.

On December 8, 2015, Plaintiff filed "protected health information provided by her private physician for ADA accommodation" on the docket without properly sealing it. Case No. 15-cv-13285, Dkt. No. 30, p. 1 (Pg. ID 1845); Case No. 15-cv-

-3-

13285, p. 22 (Pg. ID 524) (noting Plaintiff's health ailments would make traveling to different campus to teach difficult). The Court ultimately struck the entire filing as untimely on December 17, 2015. Case No. 15-cv-13285, Dkt. No. 32, pp. 2–3 (Pg. ID 1850–51) ("Plaintiff then filed two motions, Dkt. No. 30–31, seeking to strike duplicative filings, Dkt. No. 26–27, and seal an exhibit she herself filed without complying with Local Rule 5.3(a).").

After full briefing and oral argument, the Court granted Defendants' Motion to Dismiss and/or Motion for Summary Judgment on January 27, 2016. *See id*. Plaintiff filed a timely appeal. Case No. 15-cv-13285, Dkt. No. 38, p. 1 (Pg. ID 1904).

The Sixth Circuit affirmed the Court's judgment on November 3, 2016 after performing a *de novo* review. Case No. 15-cv-13285, Dkt. No. 40, p. 2 (Pg. ID 1908). In its Order, the Sixth Circuit held: (1) "Hawthorne-Burdine could not rebut Oakland University's proffered legitimate, nondiscriminatory reason for her termination, and the district court did not err in dismissing her race discrimination claim," *id.* at 3–4 (Pg. ID 1909–10); (2) "The district court did not err in dismissing Hawthorne-Burdine's ADA and ADEA claims against Oakland University because the university is entitled to sovereign immunity," *id.* at 4 (Pg. ID 1910); (3) "The district court did not err in dismissing Hawthorne-Burdine's claims against the individually named defendants because individuals who are not

employers cannot be held personally liable under the ADA," *id.*; (4) "The district court did not err in dismissing the claims against the Oakland University Police Department because it does not exist as an entity separate from the university itself," *id.*; (5) "The district court did not err in dismissing her claims against Medicolegal because Hawthorne-Burdine did not allege that Medicolegal was her employer," *id.*; (6) "The district court did not err in declining to exercise jurisdiction over Hawthorne-Burdine's supplemental state-law claims because the court properly dismissed her federal claims," *id.*; (7) "[Hawthorne-Burdine] is not entitled to relief on her judicial bias claim because 'judicial rulings alone almost never constitute valid basis for a bias or partiality recusal motion,' " *id.*; and (8) "a district court does not abuse its discretion in failing to grant a party leave to amend where such leave is not sought." *Id.* at 4–5.

There is no evidence on the 2015 Case's docket that Plaintiff appealed the Sixth Circuit's order affirming judgment to the United States Supreme Court.

## C. The 2016 Case

After appealing the 2015 Case, but prior to the Sixth Circuit's decision affirming the Court's judgment, Plaintiff filed this second proceeding (hereinafter, the "2016 Case") in August 2016. *See* Dkt. No. 1. Plaintiff filed a first Amended Complaint on September 28, 2016, adding Defendants' counsel from the 2015 Case, Daniel Bernard, as a new defendant and adding four additional claims. Dkt.

No. 12. Plaintiff's 2016 Amended Complaint includes 21 claims. *Id*. On October 31, 2016, the Court dismissed six of Plaintiff's claims that had been dismissed with prejudice in the 2015 Case. Dkt. No. 29, p. 6 (Pg. ID 804). The dismissed claims alleged violations of the Americans with Disabilities Act (ADA), Title VII of the Civil Rights Act (Title VII), and Age Discrimination in Employment Act (ADEA). *Id*. Accordingly, fifteen of the claims brought in Plaintiff's Amended Complaint remain.

On October 25, 2016, Medicolegal filed a Motion to Dismiss, arguing that Plaintiff's claims are barred by res judicata and fail to state a claim upon which relief can be granted. Dkt. No. 25. Oakland Defendants similarly filed a Motion to Dismiss and/or for Summary Judgment based on the Amended Complaint on November 22, 2016, Dkt. No. 33, which was stricken for utilizing an improper font size, Dkt. No. 34. The Court granted Oakland Defendants an additional six days to refile the brief in accordance with the Local Rules. Dkt. No. 34. Oakland Defendants submitted a renewed motion, in compliance with the Local Rules, on November 28, 2016. Dkt. No. 35.

### III. LEGAL STANDARDS

#### A. FED. R. CIV. P. 12(b)(1)

When defendants seek to dismiss an action under Rules 12(b)(1) and 12(b)(6), the court is "bound to consider the 12(b)(1) motion first, since the Rule

12(b)(6) challenge becomes moot if this court lacks subject matter jurisdiction." *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990). Dismissals for lack of jurisdiction should generally be made without prejudice. *Ernst v. Rising*, 427 F.3d 351, 367 (6th Cir. 2005).

Under a Rule 12(b)(1) motion, the plaintiff bears the burden of proving jurisdiction in order to survive the motion. *Id*. Furthermore, on a Rule 12(b)(1) motion, unlike a Rule 12(b)(6) motion, the court is empowered to resolve factual disputes. *Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 915 (6th Cir. 1986).

"Motions to dismiss for lack of subject matter jurisdiction fall into two general categories: facial attacks and factual attacks." *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). Whereas a facial attack is a challenge to the sufficiency of the pleading itself, a factual attack challenges the factual existence of subject matter jurisdiction. *Id*. Where the motion makes a facial attack, the court must construe the petition's allegations in the light most favorable to the non-moving party and take the material allegations as true. *Id*. Conversely, on a factual attack, there is no presumption of truthfulness applied to factual allegations, allowing the court to "weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id*.

### B. Fed. R. Civ. P. 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." To withstand a motion to dismiss pursuant to Rule 12(b)(6), a complaint must comply with the pleading requirements of Federal Rule of Civil Procedure 8(a). *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotation marks omitted) (quoting Fed. R. Civ. P. 8(a)(2); *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). To meet this standard, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see also Iqbal*, 556 U.S. at 678–80 (2009) (applying the plausibility standard articulated in *Twombly*).

When considering a Rule 12(b)(6) motion to dismiss, the Court must construe the complaint in a light most favorable to the plaintiff and accept all of her factual allegations as true. *Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008). However, the Court need not accept mere conclusory statements or legal conclusions couched as factual allegations. *See Iqbal*, 556 U.S. at 678.

-8-

In ruling on a motion to dismiss, the Court may consider "the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). The Court may also consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights*, Ltd., 551 U.S. 308, 322 (2007).

### C. FED. R. CIV. P. 56

Federal Rule of Civil Procedure 12(d) provides that, "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." The parties "must be given a reasonable opportunity to present all the material that is pertinent to the motion." FED. R. CIV. P. 12(d). A motion for summary judgment under Rule 56 can be filed "at any time until 30 days after the close of all discovery." FED. R. CIV. P. 56(b).

Federal Rule of Civil Procedure 56(c) "directs that summary judgment shall be granted if 'there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " *Cehrs v. Ne. Ohio Alzheimer's Research Ctr.*, 155 F.3d 775, 779 (6th Cir. 1998). The court must view the facts,

and draw reasonable inferences from those facts, in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255 (1986). No genuine dispute of material fact exists where the record "taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus., Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Ultimately, the court evaluates "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.

## D. Standards Regarding *Pro Se* Complaints

*Pro se* complaints are held to "less stringent standards" than those drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). "While a *pro se* party is entitled to have her pleadings construed liberally, she will not be relieved of the responsibility to comply with the basic rules of court." *Brown v. Woodward*, 145 F.3d 1330 (6th Cir. 1998). *See also McNeil v. United States*, 508 U.S. 106, 113 (1993) (Supreme Court has "never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel"); *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989) (collecting cases where courts have required *pro se* litigants to adhere to basic pleading requirements); *Brock v. Hendershott*, 840 F.2d 339, 342–43 (6th Cir. 1988) (court

adopts rule that no special treatment was to be afforded ordinary civil litigants who proceed *pro se*).

A court shall dismiss a case at any time if the court determines that the action is: "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). A complaint is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A frivolous complaint may be "based on an indisputably meritless legal theory," rest on "clearly baseless" factual contentions, rely on "claims of infringement of a legal interest which clearly does not exist," or describe "fantastic or delusional scenarios." *Id.* at 327–28.

## IV. DISCUSSION

In the 2016 Case, Plaintiff has pled five new state law claims (Count VII, Count IX–XII) and ten new federal law claims (Count VIII, Counts XIII–XXI). Plaintiff's new claims are as follows: (1) Count VII: Bullard Plawecki, Employee Right To Know (Act 397 OF 1978, M.C.L. § 423.501 *et seq*); (2) Count VIII: Breach Of Collective Bargaining Agreement (CBA) (LMRA § 301(a), 1976; 29 U.S.C.A. § 185(a) (1976)); (3) Count IX: Wrongful Termination/Promissory Estoppel (Restatement (Second) Of Contracts, § 90); (4) Count X: Fraud in the Inducement (MCL 566.132; MSA 26.922); (5) Count XI: Defamation—

-11-

Libel/Slander (M.C.L. 600.2911 et seq.);(6) Count XII: Intentional Infliction Of Emotional Distress ("IIED") (Restatement (Second) Of Torts § 46(1) (1965); Worker's Disability Compensation Act (WDCA); M.C.L. § 418.131(1); 1987 PA 28; MSA § 17.237(131)(1)); (7) Count XIII: Malicious Prosecution (Fifth Amendment, 42 U.S.C. § 1983); (8) Count XIV: Right To Due Process Of Law: 42 U.S.C. § 1983 (Fifth And Fourteenth Amendment; Michigan Constitution Art. I § 7); (9) Count XV: Conspiracy (42 U.S.C. § 1985); (10) Count XVI: Freedom to Associate; 42 U.S.C. § 1983 (First and Fourteenth Amendment); (11) Count XVII: False Imprisonment (Fourth Amendment; 42 U.S.C. § 1983); (12) Count XVIII: Failure To Prevent Violations And Civil Conspiracy (Fourth Amendment; 42 U.S.C. § 1986); (13) Count XIX: Invasion Of Privacy, Public Disclosure (Privacy Act Of 1974, 5 U.S.C. § 552a (1982); Restatement (Second) Torts § 652(D)); (14) Count XX: Invasion Of Privacy, Publicity Of Person In False Light (Privacy Act Of 1974, 5 U.S.C. § 552a (1982); Restatement (Second) Torts § 652(E)); and (15) Count XXI: Warrantless Search And Seizure (Fourth Amendment; 42 U.S.C. § 1983; Restatement (Second) Torts § 652A; Michigan Constitution, § 11).

The Court will first address Defendants' arguments concerning *res judicata*, with respect to Plaintiff's ten new federal law claims (Count VIII, Counts XIII–XXI).

-12-

**A. Claim Preclusion Bars Nine of Plaintiff's New Federal Claims**

Both motions raise the issue that this is the second case premised on the same series of events, of which nearly all defendants were previously named. Federal law does not grant parties the opportunity to relitigate matters where they have previously received a dissatisfactory judgment.[1] *See Thomas v. Miller*, 329 F. App'x 623, 628 (6th Cir. 2009) (finding that a plaintiff "cannot have a second bite at the apple" where the plaintiff previously used the defendants' alleged discrimination to bring suit under a different federal statute).

The preclusive effect of a prior adjudication is referred to as *res judicata*. *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 77 n.1 (1984). *Res judicata* can be broken down into two separate doctrines: claim preclusion and issue preclusion. *Id*. "Issue preclusion refers to the effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided." *Id*. "Claim preclusion refers to the effect of a judgment in foreclosing litigation of a matter that never has been litigated, because of a determination that it should have been advanced in an earlier suit." *Id*. Claim preclusion "serves to 'avoid multiple suits on identical entitlements or obligations between the same parties.' " *Bravo-Fernandez v. United States*, 137 S. Ct. 352, 357 (2016) (quoting 18 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 4402, p. 9 (2d ed. 2002)).

---

[1] Where a party believes there is a legal basis with which to challenge a district court's judgment, they may appeal that judgment to a federal appellate court.

Although claim preclusion bars claims that could have been brought at the time of the original case, it does not prevent new causes of action that ripened after the filing of the original case. *See Elder v. Twp. of Harrison*, 489 F. App'x 934, 937 (6th Cir. 2012).

To establish claim preclusion, Defendants must show (1) "a final judgment on the merits" in a prior action; (2) "a subsequent suit between the same parties or their privies"; (3) an issue in the second lawsuit that should have been raised in the first; and (4) that the claims in both lawsuits arise from the same series of transactions. *Wheeler v. Dayton Police Dep't*, 807 F.3d 764, 766 (6th Cir. 2015).

### i. Final Adjudication on the Merits

First, the Court finds that Defendants have demonstrated that there was a final judgment on the merits in the 2015, where the Court granted summary judgment to Defendants and dismissed Plaintiff's federal claims with prejudice.[2] This judgment was affirmed on *de novo* review by the Sixth Circuit.

"The grant of summary judgment most certainly constitutes a final adjudication on the merits for purposes of claim preclusion." *Heike v. Cent. Michigan Univ. Bd. of Trustees*, 573 F. App'x 476, 480 (6th Cir. 2014). Accordingly, there was a sufficiently final decision in the 2015 Case.

---

[2] After dismissing all of Plaintiff's federal claims with prejudice, the Court declined to exercise supplemental jurisdiction over Plaintiff's state law claims, dismissing those without prejudice.

ii.     **Same Parties or Their Privies**

Second, a "final judgment on the merits of an action bars the same parties 'or their privies' from relitigating claims that were or could have been raised in that action." *Heike*, 573 F. App'x at 481 (citing *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981)).

In the 2015 Case, Plaintiff named the following defendants that she named again in the 2016 Case: Oakland University, Medicolegal, Betty Youngblood, Carly Schatzberg, Catherine Rush, Cheryl McPherson, Cheryl Michelle Piskulich, Darlene Schott-Baer, Gary Moore, George Hynd, Glenn McIntosh, James Franklin; James Lentini, Janine DeWitte, John Krauss, Kathleen Walsh Spencer, Kerri Schuiling, Mark Gordon, Mark Schlussel, Melissa Stolicker, Michael Kramer, Nancy Schmitz, Richard DeVore, Richard Flynn, Ronald Robinson, Samuel Lucido, Sarah Newton, Scott Kunselman, Victor Zambardi, W. David Tull, and Does 1–100. All defendants in the 2015 case were "sued in official and personal capacity; and . . . jointly and severally." Case No. 15-cv-13285, Dkt. No. 4, p. 1 (Pg. ID 57). Plaintiff named Oakland University as a defendant in every claim in the 2015 Case, and brought Count IX, an ADA claim for hostile work environment and harassment, against all other defendants. *See* Case No. 15-cv-13285, Dkt. No. 4-1, p. 5 (Pg. ID 111). As mentioned above, all federal claims in the 2015 Case

against Defendants, both in their individual and official capacities, were dismissed with prejudice.

Additionally, Plaintiff's 2016 Case added two new defendants. Dkt. No. 12, p. 1 (Pg. ID 263). Plaintiff now sues Defendant Beaghan, Oakland University's Vice President of Finance and Administration and a member of the Board of Trustees, in his individual capacity. *Id*. at 6–7. Plaintiff is also now suing Defendant Bernard, Oakland's outside legal counsel, in his individual capacity. *Id*. at 9. Plaintiff's 2016 Case omitted prior claims against the Oakland University Police Department, which does not exist as an entity separate from the university itself.

"Principles of claim preclusion 'do not always require one to have been a party to a judgment in order to be bound by it.'" *Heike*, 573 F. App'x at 481 (quoting *Richards v. Jefferson Cnty.*, 517 U.S. 793, 798 (1996)). Rather, "there is an exception when . . . there is 'privity' between a party to the second case and a party who is bound by an earlier judgment." *Id*. The Sixth Circuit recognizes that "[i]ndividuals sued in their official capacities stand in the shoes of the entity they represent." *Id*. (quoting *Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003)).

The distinction between official capacity and individual capacity claims is not ironclad. *Fleming v. City of Detroit*, No. 04-74081, 2006 WL 2559862, at *6 (E.D. Mich. Sept. 1, 2006). "Where there is a sufficient identity of interest between

-16-

a government official and the governmental entity or where the inclusion of the personal capacity claim amounts to nothing more than a pleading artifice, privity may be found to exist regardless of the fact that the official has been sued in his personal capacity." *Id.*

For instance, the *Fleming* court determined that § 1983 claims brought against a police chief in his individual capacity were barred by *res judicata* based upon the dismissal of a prior § 1983 suit, despite the fact that the police chief was not a party to the prior proceeding. 2006 WL 2559862, at *7. The Court quoted *Williams v. City of Allentown*, 25 F. Supp. 2d 599 (E.D. Pa. 1998), where the employee defendants had a sufficiently close relationship with prior defendants that they were in privity:

> Additionally, the personal capacity suits against these individuals are also barred by *res judicata* as Bloom and Watson are in privity with the prior defendants. Absent some other factor, an individual sued in his or her personal capacity is not automatically in privity with a government entity as is the case in an official capacity suit. However, the Third Circuit has long recognized that privity is a legal conclusion; the privity inquiry should be flexible enough to acknowledge the realities of parties' relationships. The court should examine whether there is such an identity of interests between the first and second party that the second should ever be deemed in privity with the first. In this case, Bloom and Watson are being sued for their actions relating to an event that the court previously ruled, for reasons of qualified immunity, to be properly decided on summary judgment. These two individuals have a sufficiently close relationship with prior parties that they should be considered in privity with those former parties. Any other holding would reward litigants who failed, intentionally or not, to include all relevant parties in action and would

-17-

permit two (or possibly many more) attempts to try the same cause of action.

*Id*. at 604 (citations and quotations omitted); *See also, e.g.*, *Licari v. City of Chicago*, 298 F.3d 664, 667 (7th Cir. 2002) (determining that a finding of privity is warranted where a plaintiff does not allege any action taken against him by the new defendants—in either their official or individual capacities—that is separate and distinct from any action taken by the government entity); *Cohen v. Shea*, 788 F. Supp. 66, 68 (D. Mass. 1992) ("a party cannot escape the rule of *res judicata* through expansive pleading").

Here, none of the counts in which Beaghan is listed as a defendant allege any actions Beaghan personally took against Plaintiff that are separate and distinct from actions taken by Oakland University. Similarly, the Complaint does not describe how Beaghan was in any way personally involved in the deprivation of Plaintiff's rights.[3] Plaintiff's claims against Beaghan appear to be predicated solely upon his role "oversee[ing] the University['s] day-to-day financial operations, risk management, and the University's Police Department." Dkt. No. 12, p. 7 (Pg. ID 269). Based on Plaintiff's allegations against Beaghan, it is fair to say that Beaghan had a sufficiently close relationship with prior defendants that he can be considered to be in privity with the University. Accordingly, the inclusion of claims against

---

[3] These counts do not mention Beaghan at all, apart from listing him as a defendant in the header of each claim.

-18-

Beaghan in his individual capacity amounts to nothing more than a pleading artifice.

Similar to Beaghan, none of the counts in which Bernard is listed as a defendant allege any actions Bernard personally took against Plaintiff, separate and distinct from actions taken by Oakland University. The Complaint does not describe how Bernard was in any way personally involved in the deprivation of Plaintiff's rights.[4] Plaintiff's claims against Bernard are tied to "his legal representation for all other Defendants." Dkt. No. 12, p. 9 (Pg. ID 271). Bernard's connection to the 2016 Case arises out of his role as private legal counsel Oakland University hired in the 2015 Case. One of the exhibits attached to the 2016 Amended Complaint states that Bernard was the individual who placed Plaintiff's medical records on the docket without seal in the 2015 Case. *See* Dkt. No. 14-26, p. 1 (Pg. ID 532). Since it is not clear that Bernard was in privity with Oakland University and the repeat defendants prior to September 2015, the Court cannot say at this point that he is in privity with the rest of the Defendants.

Accordingly, all Defendants, except Bernard, are found to be the same or in privity with previous defendants in the 2015 Case.

---

[4] These counts do not mention Bernard at all, apart from listing him as a defendant in the header of each claim.

### iii.   Issues Actually Litigated or Issues that Should Have Been Litigated

"One purpose of claim preclusion is to compel litigants to bring all related claims in a single lawsuit." *Heike*, 573 F. App'x at 482 (citing *Wilkins v. Jakeway*, 183 F.3d 528, 532 n. 4 (6th Cir. 1999)). Thus, this element of claim preclusion bars not only claims already brought, but also claims that should have been brought in the original action. *Id*. A plaintiff should have litigated a claim in her first suit if the claim "arose from the same transaction, or series of transactions" as any claim in the prior suit. *Rawe v. Liberty Mut. Fire Ins. Co.*, 462 F.3d 521, 529 (6th Cir. 2006).

In *Rawe*, the Sixth Circuit determined that a plaintiff's first and second causes of action arose from the same transaction where the plaintiff's allegations of bad faith were based upon the defendant's conduct that predated the plaintiff's first suit. *Id*. The plaintiff in *Rawe* brought suit for uninsured motorist benefits and then brought a subsequent action against her insurer for bad faith that allegedly occurred both before and after her initial uninsured motorist claim was adjudicated. *Id*. The Sixth Circuit affirmed the district court's dismissal of the plaintiff's bad-faith claims, concluding that plaintiffs cannot avoid the effects of claim preclusion by merely repacking their grievances into alternative theories of recovery or by seeking different remedies. *Id*. *See also Heike*, 573 F. App'x at 482.

The nucleus of Plaintiff's factual allegations in the 2015 Case was that a student's audio recording of one of Plaintiff's lectures led to a campus committee determining that Plaintiff posed a threat to campus safety. *Hawthorne-Burdine*, 158 F. Supp. 3d at 592–94. That committee then had Plaintiff removed from campus by the campus police in September 2013. *Id*. Following her removal, the university required Plaintiff to undergo medical examinations to retain full pay and benefits. *Id*. The examinations were to determine if there was an underlying medical condition causing what the university believed to be abnormal behavior. *Id*. at 594–95. Plaintiff filed a grievance over her removal, and then arbitrated her removal through her campus union. *Id*. at 595. The arbitrator sustained part of her grievance, finding that although the committee deliberated in good faith, it should have notified Plaintiff prior to removing her from campus. *Id*. While Plaintiff was removed from campus, two separate tenure committees recommended that she be denied tenure, citing her lack of recent publications and her failure to secure funding. *Id*. at 595–96. Shortly after receiving a return to work letter in July 2014, Plaintiff was denied tenure in August 2014, ending her employment with the university. *Id*. She did not file a grievance concerning her tenure denial. *Id*.

Based on the facts above, Plaintiff alleged discrimination based on race, age, and disability in the 2015 Case. She realleged those claims in the 2016 Case, in addition to new claims that her constitutional and statutory rights were violated by

those same acts. After reviewing the Amended Complaints in Plaintiff's 2015 Case and 2016 Case, the Court finds that there is a factual and evidentiary nexus between the pleadings on all but one of Plaintiff's new federal claims.

Plaintiff's Count VIII: Breach Of Collective Bargaining Agreement (CBA) claim is premised on allegations that Oakland University violated Plaintiff's collective bargaining agreement during her CBA by removing her from campus in the fall 2013. Dkt. No. 12, pp. 54–57 (Pg. ID 316–19). Count VIII is premised on the same series of transactions that the Court considered in the 2015 Case. Thus, this claim should have been litigated in the 2015 Case.

Plaintiff's Count XIII: Malicious Prosecution claim appears to allege that defendants conspired and initiated an arbitration proceeding against Plaintiff that she believes was resolved in her favor. Dkt. No. 12, p. 67–69 (Pg. ID 329–31). Count XIII is premised on the same series of transactions that the Court considered in the 2015 Case. The arbitration proceeding transpired entirely before the filing of the 2015 Case. Thus, this claim should have been litigated in the 2015 Case.

Plaintiff's Count XIV: Right To Due Process Of Law claim alleges that defendants denied her due process and performed a warrantless search and seizure by removing Plaintiff from campus in 2013 and "refusing to notify the appropriate officials that Plaintiff had not committed any acts or omissions that constituted a violation of the law." Dkt. No. 12, p. 70 (Pg. ID 332). Count XIV is premised on

the same series of transactions that the Court considered in the 2015 Case. Plaintiff's removal from campus took place in September 2013, before Plaintiff filed the 2015 Case. Thus, this claim should have been litigated in the 2015 Case.

Plaintiff's Count XV: Conspiracy claim alleges that defendants conspired to have Plaintiff removed from campus in September 2013 and testified against her in an arbitration proceeding that preceded the 2015 Case. Dkt. No. 12, pp. 71–72 (Pg. ID 333–34). Count XV is premised on the same series of transactions that the Court considered in the 2015 Case. Both Plaintiff's removal from campus and the arbitration proceedings took place before Plaintiff filed the 2015 Case. Thus, this claim should have been litigated in the 2015 Case.

Plaintiff's Count XVI: Freedom to Associate claim alleges that defendants restricted Plaintiff's freedom of association by having her removed from campus in September 2013. Dkt. No. 12, pp. 72–74 (Pg. ID 334–36). Plaintiff's claim ripened prior to September 2015. Count XVI is premised on the same series of transactions that the Court considered in the 2015 Case. Thus, this claim should have been litigated in the 2015 Case.

Plaintiff's Count XVII: False Imprisonment claim alleges defendants forced Plaintiff to submit her body to independent medical examinations in 2013 and 2014 and removed her from campus in 2013. Dkt. No. 12, pp. 74–75 (Pg. ID 336–37). Both Plaintiff's medical examinations and her removal from campus

transpired before she initiated the 2015 Case. Count XVII is premised on the same series of transactions that the Court considered in the 2015 Case. Thus, this claim should have been litigated in the 2015 Case.

Plaintiff's Count XVIII: Failure To Prevent Violations And Civil Conspiracy claim alleges defendants failed to prevent the conspiracy Plaintiff alleged in Count XV. Dkt. No. 12, pp. 75–77 (Pg. 337–39). As mentioned above, all acts related to Plaintiff's conspiracy claim concluded before she initiated the 2015 Case and should have been litigated in the 2015 Case.

Plaintiff's Count XX: Invasion Of Privacy, Publicity Of Person In False Light claim alleges that campus police publicly removed Plaintiff from campus in September 2013. Dkt. No. 12, p. 79 (Pg. ID 341). Plaintiff's removal from campus took place before she initiated the 2015 Case. Count XX is premised on the same series of transactions that the Court considered in the 2015 Case. Thus, this claim should have been litigated in the 2015 Case.

Plaintiff's Count XXI: Warrantless Search And Seizure claim alleges that defendants removed Plaintiff from campus, searched her office, and removed papers from her office in September 2013. Dkt. No. 12, pp. 80–81 (Pg. ID 342–43). Plaintiff's removal from campus took place before she initiated the 2015 Case. Count XXI is premised on the same series of transactions that the Court considered in the 2015 Case. Thus, this claim should have been litigated in the 2015 Case.

-24-

The only exception to the claims being based on transactions litigated in the 2015 Case is Plaintiff's Count XIX: Invasion of Privacy, Public Disclosure claim. Dkt. No. 12, pp. 77–79 (Pg. ID 339–41). In Count XIX, Plaintiff alleges that defendants placed her medical reports on the Court's docket without sealing them and without her authorization in the 2015 Case. *Id.* As this claim accrued after September 2015, it is not subject to claim preclusion.

Accordingly, Plaintiff should have brought nine of her ten new federal claims in the 2015 Case, and she cannot now avoid the effect of claim preclusion by simply asserting a different theory of recovery. *Heike*, 573 F. App'x at 482.

### iv. Arising from the Same Transaction

Finally, to constitute a bar under the doctrine of claim preclusion, there must also be an "identity of the causes of action." *Westwood Chem. Co. v. Kulick*, 656 F.2d 1224, 1227 (6th Cir. 1981). "Causes of action share an identity where the facts and events creating the right of action and the evidence necessary to sustain each claim are the same." *Heike*, 573 F. App'x 476, 483 (citing *Sanders Confectionery Prod., Inc. v. Heller Fin., Inc.*, 973 F.2d 474, 484 (6th Cir. 1992)). Courts are to examine the suits for factual overlap to see "if they are based on substantially the same operative facts, regardless of the relief sought in each suit." *United States v. Tohono O'Odham Nation*, 563 U.S. 307, 317 (2011).

Here, Plaintiff's initial discrimination claims in the 2015 Case share an identity to those asserted in the 2016 Case because all of her claims stem from the same set of operative facts. The Sixth Circuit has found that the question is not whether the old and new causes of action require satisfaction of identical statutory elements, "but rather whether the same underlying factual evidence could support and establish both the former and present causes of action." *Heike*, 573 F. App'x at 483 (citing 2. H. Black, Law of Judgments § 726, p. 866 (1891)).

As described multiple times above, Plaintiff's 2015 and 2016 Cases stem from the same factual predicate. Plaintiff does not allege any new material facts in her 2016 Case Amended Complaint. Had Plaintiff brought her new federal claims along with her discrimination claims in the 2015 Case, she would have relied on the same evidence in support of those claims. The 2015 Case relied on the factual allegations and evidence regarding Plaintiff's removal from campus, arbitration proceedings, and denial of tenure, just as nine of the ten new federal allegations do in the 2016 Case. During oral argument, Plaintiff herself conceded that her claims are barred by *res judicata*.

Accordingly, all four elements of claim preclusion are satisfied for every defendant except Bernard, on every new federal claim except Count XIX. Counts Count VIII, Counts XIII–XVIII, and Counts XX–XXI are dismissed with prejudice.

-26-

**B. The Court Denies Plaintiff's Request that the Court Vacate Its Order in the 2015 Case**

During oral argument and in her response brief, Plaintiff argued that the Court should vacate its prior opinion and order dismissing her claims in the 2015 Case. As mentioned above, this order has already been affirmed by the Sixth Circuit.

Plaintiff cited to two appellate cases in support of her argument: *Tingler v. Marshall*, 716 F.2d 1109 (6th Cir. 1983) and *Ferdik v. Bonzelet*, 963 F. 2d 1258 (9th Cir. 1992). Dkt. No. 31, p. 16 (Pg. ID 823). Both cases are readily distinguishable.

In *Tingler*, the Sixth Circuit found that a district court's *sua sponte* dismissal of a plaintiff's complaint on the merits, prior to service on defendant and without opportunity to amend, was improper. 716 F.2d at 1111. Plaintiff's complaint in the 2015 Case was not dismissed *sua sponte*, prior to service upon defendants. It was dismissed after defendants had been served and moved for summary judgment. Plaintiff was aware that she had the right to amend her complaint, because she had already amended it once. *See* Case No. 15-cv-13285, Dkt. No. 4. Plaintiff also utilized the opportunity to present her arguments orally at the motion hearing on January 25, 2016. Because the Court did not *sua sponte* dismiss the 2015 Case, *Tingler* is inapposite.

-27-

*Ferdik* is similarly unpersuasive. In that case, the Ninth Circuit affirmed a district court's dismissal of a *pro se* litigant's civil rights complaint for failure to comply with the district court's order, finding that dismissal was not an abuse of discretion. *Ferdik*, 963 F.2d 1258. The plaintiff in *Ferdik* had filed a motion for reconsideration, which the district court granted, vacating the earlier judgment and allowing a second amended complaint to be filed before an appeal took place. *Id.* at 1260. In the 2015 Case, Plaintiff did not seek leave to amend a second time, nor did she file a motion for reconsideration of the Court's order of dismissal. Accordingly, *Ferdik* is inapplicable to both the 2015 and 2016 Cases.

When Plaintiff chose to appeal to the Sixth Circuit immediately after the Court issued its opinion and order in the 2015 Case, she waived her right to seek reconsideration or leave to amend her complaint for a second time. The Court will not revisit its prior order of dismissal in the 2015 Case, which has already been affirmed on appeal.

### C. Plaintiff's Invasion of Privacy Must Be Dismissed for Failure to State A Claim

Only one of Plaintiff's new federal claims is based off factual allegations and evidence different from the 2015 Case, and ripened after Plaintiff filed her first suit in September 2015. This claim is Count XIX: Invasion Of Privacy, Public Disclosure, brought against Defendants Oakland University, Medicolegal, Daniel

Bernard, and Cheryl Michelle Piskulich. Dkt. No. 12, pp. 77–79 (Pg. ID 339–41). As recited above, Plaintiff alleges in this claim that defendants placed her medical reports on the Court's docket in the 2015 Case without sealing them and without her authorization. *Id*.

On October 30, 2015, Plaintiff filed a Privacy Complaint against Oakland University and Medicolegal Services with the U.S. Department of Health and Human Services (DHHS) Office of Civil Rights (OCR) regarding the posting of these records. *Id*. OCR's letter acknowledging receipt of Plaintiff's complaint stated that "[t]his allegation could reflect a violation of 45 C.F.R. § 164.530(c)," but OCR declined to initiate an investigation of the matter absent additional allegations of noncompliance. Dkt. No. 14-27, p. 1 (Pg. ID 536).

Plaintiff cites the Privacy Act of 1974, 5 U.S.C. § 552a (1982) as providing her standing to bring this claim. "The Privacy Act of 1974 regulates the collection, maintenance, use, and dissemination of information concerning individuals," subjecting each agency that maintains a system of records to its requirements. *Cardamone v. Cohen*, 241 F.3d 520, 524 (6th Cir. 2001). The Sixth Circuit has held that the Privacy Act applies solely to federal agencies. *Schmitt v. City of Detroit*, 395 F.3d 327, 331 (6th Cir. 2005) ("The fact that the Privacy Act contains a section that defines the term 'agency' as including only those agencies that fall under control the federal government, coupled with a legislative history that

supports such a reading of its scope, forces us to conclude that . . . the Privacy Act applies exclusively to federal agencies.").

None of Plaintiff's allegations regarding the posting of her medical records during the 2015 Case state that a federal agency was involved in the posting. None of the defendants listed in Plaintiff's Invasion Of Privacy, Public Disclosure claim are federal agencies. Accordingly, none of these defendants are subject to the requirements of the Privacy Act. Plaintiff's Count XIX is dismissed with prejudice.

### D. The Court Declines to Exercise Supplemental Jurisdiction Over Plaintiff's State Law Claims

All of Plaintiff's federal claims in the 2016 Case have been dismissed with prejudice. The Court declines to exercise supplemental jurisdiction over her state law claims because the Court has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3). Accordingly, the Court will dismiss Plaintiff's five new state law claims (Count VII, Count IX–XII) without prejudice.

### V. CONCLUSION

For the reasons discussed, the Court **HEREBY GRANTS** Oakland Defendants' Renewed Motion to Dismiss and/or Motion for Summary Judgment [35]. Additionally, the Court **GRANTS** Medicolegal's Motion to Dismiss [25].

**IT IS FURTHER ORDERED** that Plaintiff's ten new federal law claims (Count VIII, Counts XIII–XXI) are **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that Plaintiff's five new state law claims (Count VII, Counts IX–XII) are **DISMISSED WITHOUT PREJUDICE.**

**IT IS SO ORDERED**.

Dated:        February 14, 2017

/s/Gershwin A Drain
HON. GERSHWIN A. DRAIN
United States District Court Judge