UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Dorothy Hawthorne-Burdine,

Plaintiff,

v.

Oakland University, et al.,

Defendants.
_____/

Case No. 16-cv-13118

United States District Court Judge
Gershwin A. Drain

United States Magistrate Judge
Anthony P. Patti

**Opinion and Order Granting Oakland University Defendants' Motion for Reconsideration [52] and Granting Oakland University Defendants' Motion for Sanctions [46]**

### I. Introduction

On April 24, 2017, the Court granted Medicolegal Services' Motion for Sanctions [49] and denied Oakland Defendants' Motion for Sanctions [46] on the ground that compliance with the safe harbor provision of Rule 11 had not been demonstrated. Dkt. No. 51. Shortly thereafter, Oakland University Defendants filed the present Motion for Reconsideration [52], arguing that they need not have attached documentation of their compliance to comply with Rule 11.

The Court does not conduct hearings on motions for reconsideration, E.D. Mich. LR 7.1(f)(1), and accordingly the motion will be resolved solely on the briefing. For the reasons discussed herein, the Court **GRANTS** Oakland University Defendants' Motion for Reconsideration [52].

-1-

## II. BACKGROUND

The Court has recited the facts regarding Plaintiff's two cases against Defendants in prior orders, and will not repeat those facts here for the sake of brevity. *See* Dkt. Nos. 44, 51; *Hawthorne-Burdine v. Oakland Univ.*, 158 F. Supp. 3d 586 (E.D. Mich. 2016); *Hawthorne-Burdine v. Oakland Univ.*, No. 16-1103 (6th Cir. Nov. 3, 2016).

## III. LEGAL STANDARD

United States District Court for the Eastern District of Michigan Local Rule 7.1(h)(3) provides:

> Generally, and without restricting the Court's discretion, the Court will not grant motions for rehearing or reconsideration that merely present the same issues ruled upon by the Court, either expressly or by reasonable implication. The movant must not only demonstrate a palpable defect by which the Court and the parties and other persons entitled to be heard on the motion have been misled but also show that correcting the defect will result in a different disposition of the case.

E.D. Mich. LR 7.1(h)(3). "A 'palpable defect' is 'a defect that is obvious, clear, unmistakable, manifest, or plain.' " *United States v. Lockett*, 328 F. Supp. 2d 682, 684 (E.D. Mich. 2004) (citing *United States v. Cican*, 156 F. Supp. 2d 661, 668 (E.D. Mich. 2001)). "[A] motion for reconsideration is not properly used as a vehicle to re-hash old arguments or to advance positions that could have been argued earlier but were not." *Smith ex rel. Smith v. Mount Pleasant Pub. Sch.*, 298

F. Supp. 2d 636, 637 (E.D. Mich. 2003) (citing *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998)).

## IV. DISCUSSION

### A. The Court Made A Palpable Error in Denying Oakland University Defendants' Motion for Sanctions Based on Failure to Demonstrate Compliance with the Safe Harbor Provision

The Sixth Circuit has held that strict adherence to Rule 11's outlined procedure is required for a court to grant sanctions. *Penn, LLC v. Prosper Bus. Dev. Corp.*, 773 F.3d 764, 767–68 (6th Cir. 2014) (noting that a warning letter cannot substitute for the properly and timely served motion Rule 11 requires). Although Sixth Circuit has previously has referenced *Hadges v. Yonkers Racing Corp.*, 48 F.3d 1320, 1328 (2d Cir. 1995), where a sanction award was reversed in part "because no evidence indicated compliance with 'safe harbor' period that current version of Rule 11 specifically mandates," *Ridder v. City of Springfield*, 109 F.3d 288, 296 (6th Cir. 1997), the Circuit has not spoken to the precise means by which a moving party demonstrates compliance with Rule 11's safe harbor provision.

In Oakland University Defendants' motion for sanctions, they stated, "[o]n October 1, 2016 and on November 30, 2016, the undersigned served the plaintiff with a copy of this motion and requested that she dismiss her complaint within 21 days. The plaintiff refused." Dkt. No. 46, p. 7 (Pg. ID 1376). Oakland Defendants

-3-

did not attach exhibits in support, such as dated copies of the motions sent to Plaintiff, that verified the strict compliance that Rule 11(c)(2) requires.

In their motion for reconsideration, Oakland Defendants attached both motions sent to Plaintiff in late 2016. Dkt. Nos. 52-3, 52-4. They also now concede that the second date stated in their sanctions motion was incorrect, and that the second safe-harbor motion was actually sent on December 2, 2016. Dkt. No. 52, p. 5 (Pg. ID 1673). Even with the misstatement of date, both motions were sent to Plaintiff well before the 21-day period required by Rule 11.

The Court agrees that, upon further review, the Sixth Circuit did not require Oakland Defendants to attach exhibits providing factual support for their compliance with the safe harbor provision of Rule 11, where there was no dispute that such documents had been properly and timely served. Thus, in holding that it was necessary to attach exhibits demonstrating compliance to the motion for sanctions, the Court made a palpable defect. Based on the arguments and evidence now before the Court, the Court finds that this defect would result in a different disposition of Oakland Defendants' motion for sanctions.

**B. Reconsidering Oakland University Defendants' Motion for Sanctions**

Oakland University Defendants filed their motion for sanctions on February 23, 2017. Dkt. No. 46. Several months have passed, and at no time did Plaintiff respond to their motion, dispute the allegations Defendants made in the motion, or

-4-

request a hearing on the motion. Plaintiff has appealed the Court's grant of sanctions to Medicolegal, a motion that also was uncontested. *See* Dkt. No. 53.

Having found that Oakland Defendants have demonstrated their compliance with Rule 11's safe harbor provision, the Court will now consider the factors to be assessed in determining whether sanctions are to be awarded.

First, the Court must consider whether Plaintiff violated Rule 11 with respect to her claims against Oakland Defendants. *See Danvers v. Danvers*, 959 F.2d 601, 604 (6th Cir. 1992). Rule 11 imposes a duty on parties to (1) conduct a reasonable inquiry to determine the pleading is well grounded in fact; (2) conduct a reasonable inquiry to determine that existing law—or as good faith arguments for extension or modification of existing law—warrants the positions taken; and (3) not file pleadings for an improper purpose, such as harassment, delay, or needless increase of litigation costs. *Id*. As the Court noted in its previous order, Plaintiff has filed at least three lawsuits against Defendants in state and federal court for claims arising from the same allegations of fact. *See* Dkt. No. 51. The Court dismissed Plaintiff's first case and explained why her claims could not proceed, and yet Plaintiff refused to voluntarily dismiss her second, duplicative case after the first dismissal was affirmed on appeal. Cursory research into her second case would have revealed that existing law did not warrant the position taken. In fact, Plaintiff stated in a hearing that she understood the law regarding claim preclusion,

but argued the Court should vacate its order from the first case. Dkt. No. 50, pp. 15–16 (Pg. ID 1650–51). Plaintiff's filing of complaints in the second case was objectively unreasonable and in violation of Rule 11.

Next, in determining the amount of sanctions, the Court looks to whether sanctions will deter future conduct of a like nature, whether the moving party mitigated its expenses, and the sanctioned party's ability to pay. *Danvers*, 959 F.2d 601, 605 (6th Cir. 1992). Because deterrence is the primary goal, the proper award is the minimum amount necessary to deter the sanctioned party. *Id*.

First, the Court finds it has the authority to issue monetary sanctions against Plaintiff, even though she is proceeding *pro se* and *in forma pauperis*, as a means of deterring future improper complaints. *See Warren v. Guelker*, 29 F.3d 1386, 1390 (9th Cir. 1994) ("Rule 11's express goal is deterrence: IFP litigants, proceeding at the expense of taxpayers, need to be deterred from filing frivolous lawsuits as much as litigants who can afford to pay their own fees and costs."). "[*P*]*ro se* filings do not serve as an 'impenetrable shield, for one acting *pro se* has no license to harass others, clog the judicial machinery with meritless litigation, and abuse already overloaded court dockets.'" *Patterson v. Aiken*, 841 F.2d 386, 387 (11th Cir. 1988) (quoting *Farguson v. MBank Houston, N.A.*, 808 F.2d 358, 359 (5th Cir. 1986)). The Court has previously found sanctions may deter Plaintiff

from bringing future claims unwarranted by law when granting Medicolegal $2,000 in sanctions.

In supplemental briefing, Oakland University Defendants provided a detailed list of the amount of time spent and fees incurred because of Plaintiff's second case. Dkt. No. 55, p. 5 (Pg. ID 1719). The total amount of compensation sought is $16,9337.50. *Id*. The Court has the information needed to determine that Plaintiff's pleadings induced a recoverable fee. *See Bodenhamer Bldg. Corp. v. Architectural Research Corp.*, 873 F.2d 109, 114 (6th Cir. 1989) ("Thus, before a district court awards an attorney fee, Rule 11 requires a finding that the recoverable fee was induced by the filing of the sanctionable pleading.").

Finally, given Plaintiff's ability to pay must be considered. As courts have noted, *in forma pauperis* status alone does not mean a litigant is unable to pay any fees or costs whatsoever, because the "standard of poverty under the IFP statute requires a relatively minimal amount of sacrifice." *Moon v. Newsome*, 863 F.2d 835, 838–39 (11th Cir. 1989) ("If misuse [of the courts] has occurred and monetary sanctions have been imposed, the plaintiff, to continue his law suit, might be required to go into debt or to dispose of assets which the IFP process otherwise would have allowed him to keep.").

Plaintiff represented that her gross pay or wages are $1,100 to $1,200 per month, of which $800 to $900 is take-home pay or wages. Dkt. No. 2. She also

stated that she has $250 in cash or a savings account, owns two cars with no monthly payments due, does not pay monthly housing expenses such as rent or mortgage payments, and has no debts or financial obligations. *Id*. The Court has already ordered Plaintiff to pay $2,000 in sanctions within 180 days of the prior order, a fraction of the $12,625.50 in attorneys' fees Medicolegal originally sought. Dkt. No. 51.

Plaintiff has not argued that she is unable to pay these sanctions. Similarly, she has not offered the court an excuse for her non-compliance with Rule 11, or even responded to Defendants' motions for sanctions. Finally, Plaintiff has not detailed any unsuccessful efforts to obtain funds with which to pay the sanctions or requested an extension to make smaller payments over time. *Cf. Moon*, 863 F.2d at 839 n.5 (noting that when facing an order with which a litigant believes he or she is unable to comply, "[e]ven a non-lawyer should realize the need to communicate . . . with the court" timely, directly, and particularly explaining his or her inability to do what the court has ordered).

Accordingly, based on the totality of the evidence provided, the Court will order Plaintiff to pay an additional $2,000 to Oakland University Defendants, within 365 days of this order.[1]

---

[1] Although Plaintiff is proceeding *pro se* and IFP, a total of $4,000 in sanctions ($2,000 to Medicolegal in six months, and $2,000 to Oakland University Defendants within a year) is not unreasonable, given her income, assets, and lack

## V. CONCLUSION

For the reasons discussed, the Court **GRANTS** Oakland University Defendants' Motion for Reconsideration [52] and **GRANTS** Oakland University Defendants' Motion for Sanctions [46].

**IT IS HEREBY ORDERED** that Plaintiff shall pay Oakland University Defendants a total of $2,000 within 365 days of the date of this order.

**IT IS SO ORDERED**.

Dated:   May 23, 2017

/s/Gershwin A Drain
HON. GERSHWIN A. DRAIN
United States District Court Judge

---

of any debts or financial obligations, and considering the amount of work induced by her sanctionable pleadings. *See, e.g.*, *In re Polyurethane Foam Antitrust Litig.*, 165 F. Supp. 3d 664, 672 (N.D. Ohio 2015) (ordering an individual proceeding *pro se*, who applied for IFP status, to pay $10,000 in sanctions).